## Case No. 11,281.

POPPENHUSEN v. NEW YORK GUTTA PERCHA COMB CO.

[2 Fish. Pat. Cas. 74; 4 Blatchf. 184.] [1]

Circuit Court, S. D. New York. July 3, 1858.

INJUNCTION — FACTS FOUND BY JURY IN SUIT BETWEEN SAME PARTIES—INFRINGEMENT OF PATENT—EFFECT OF VERDICT.

1. Where a verdict has been rendered in a suit at law between two parties, and a motion for an injunction is subsequently made in a suit in equity between the same parties, the facts found by the jury will be considered as established beyond controversy, so far as may be necessary for the purposes of the motion.

2. The writ of injunction is a remedial writ, in the nature of a prohibition. The object of such injunction is to prevent the commission of injuries in future, not to redress injuries that are past.

3. It is not necessary, before a writ to prevent a wrong, issue, that the wrong should actually have been committed. When the rights of a party under a patent have been clearly and distinctly established, and an infringement of such rights is threatened; or where they have been infringed, and the party has good reason to believe they will continue to be infringed, an injunction will issue.

[Cited in White v. Heath, 10 Fed. 294; Sherman v. Nutt. 35 Fed. 150.]

4. Where a trial at law has been had, resulting in a verdict in favor of the patentee, in which the right to the improvement patented has been fully established to the satisfaction of the court, and the infringement of right made clear, such trial, resulting in such a verdict, is sufficient, without any other proof, to authorize the court to grant an injunction to prevent any future violation of right.

[Cited in Poppenhusen v. Falke, Case No. 11,280.]

In equity. This was an application for a provisional injunction, to restrain the infringement of two letters patent. granted to L. Otto P. Meyer, one dated December 20th, 1853, [No. 339,] for an "improvement in processes for vulcanizing caoutchouc compounds," and the other dated April 4th, 1854, [No. 10,741,] for an "improvement in treating caoutchouc and other vulcanizable gums." The bill averred, that the patents had been assigned to the plaintiff [Conrad Poppenhusen] by Meyer, on the 9th of September, 1856; that the plaintiff, on the 10th of December, 1857, brought an action at law against the defendants, in this court, for a violation of the patents; that that suit came to trial before a jury, at the April term of

[1] [Reported by Samuel S. Fisher. Esq., and by Hon. Samuel Blatchford, District Judge, and here compiled and reprinted by permission. The syllabus and opinion are from 2 Fish. Pat. Cas. 74, and the statement is from 4 Blatchf. 184.]

the court, in 1858; that the originality of the inventions was put in issue and contested; that a verdict was rendered in favor of the plaintiff, on the 31st of May, 1858, on both of the patents, by which their validity, the plaintiff's right to them, and the violation by the defendants, were established [Case No. 11,282], that, since the verdict of the jury, the defendants had violated the plaintiff's rights; and that they would in future continue to violate such rights, unless they were restrained by injunction.

Francis B. Cutting and Charles M. Keller, for plaintiff.

Edwin W. Stoughton and George Gifford, for defendants.

INGERSOLL, District Judge. The allegations of the bill, if true, entitle the plaintiff to relief by injunction, as prayed for. Most of the facts set forth in the bill have not been controverted. Indeed, most of them could not be controverted, for they have been established by the verdict of a jury, upon an issue joined between the parties now before the court, which verdict was in accordance with the views entertained by the court upon the trial. The only allegation concerning the truth of which there is any serious denial by the defendants, in the affidavits which they have presented, is the allegation, that the defendants have, since the verdict was rendered, violated the rights secured to the plaintiff. They insist that the mode which they have adopted, since the 31st of May, 1858, the day on which the verdict was rendered, of vulcanizing caoutchouc compounds. is different from the mode secured by either of the Meyer patents, though they are silent upon the point as to whether, since that time, they have sold or used any of such compounds, which had, previously thereto, been vulcanized by them according to the modes patented to Meyer. The first question, then, presented is, whether, if the allegation of a violation since the verdict was rendered. were stricken from the bill, it would be sufficient to authorize the injunction prayed for. If it would, then it will be unnecessary for the court to trouble itself about the question of fact, whether or not the defendants have, since the 31st of May, 1858, been guilty of a violation of the plaintiff's rights.

The writ of injunction is a remedial writ, in the nature of a prohibition. The object of the present motion for an injunction is, to prevent the commission of injuries in future, not to redress injuries that are past. The writ prayed for is to act as a remedy against a threatened wrong, by preventing the commission of such wrong; and it is not necessary, before a writ to prevent a wrong can issue, that the wrong should actually have been committed. If it were, the remedy by injunction would be a very inadequate one. If the rights of a party, under a patent.

have been fully and clearly established, and an infringement of such rights is threatened, or, if, when they have been infringed, the party has good reason to believe they will continue to be infringed, an injunction will issue. It issues for the reason that there is good ground to believe that in future they will be infringed. Where a trial at law has been had, resulting in a verdict in favor of the patentee, and the right to the improvement patented has been fully established, to the satisfaction of the court, and the infringement of right made clear, such a trial, resulting in such a verdict, is sufficient, without any other proof, to authorize the court to grant an injunction to prevent any future violation of right. Such a trial, with such a result, affords sufficient proof, that, in future, there will be an infringement, unless such infringement is restrained by injunction. It is, under such circumstances, almost a matter of course, that the injunction should be allowed. Neilson v. Harford, Webst. Pat. Cas. 373. Such a trial at law, resulting in such a verdict, to the entire satisfaction of the court, has taken place between the parties to this suit.

In addition to this, to the charge contained in the bill, that the defendants will, in future, violate, as they have heretofore done, the rights secured by the two patents, so established on the trial in the action at law, unless they are restrained by injunction, the defendants, (particularly so far as respects the patent of the 4th of April, 1854,) have given no satisfactory answer. To that charge, their answer is, that what they have done since the verdict of the jury was rendered, has not been in violation of the plaintiff's rights; and that, since that time, they have done only what they had a right to do. Upon the trial at law, a legal construction was put upon the patents. That construction was explicit, distinct, and easy to be understood. There is no ambiguity about it. From it, it clearly appears what rights were granted by the patents. To meet that charge, the defendants should have distinctly stated that they did not intend, in future, to do the specific things which the court determined they had no right to do.

The charges contained in the bill, and either admitted, not denied, or sustained by proof, are, therefore, irrespective of the question, whether or not the defendants have, since the 31st of May, 1858, the time when the verdict of the jury was rendered, violated the rights of the plaintiff, sufficient to authorize the court to grant the injunction prayed for. There is, therefore, no necessity to decide that question of fact, on this motion. Whenever, in the course of future proceedings, it shall become the duty of the court to decide that question of fact, and the proper proof is adduced to determine it, that duty will be promptly performed. To determine it correctly, it will be necessary for the court to see the material which the

defendants use. A specimen of it has not as yet been produced.

Upon the trial at law, a construction was given by the court to both patents. As it regards the patent of the 4th of April, 1854, it was held, that the nature and object of it was, to preserve the form and shape given to the material commonly known as the hard compound of vulcanizable caoutchouc or gutta-percha, in its green, unvulcanized, and plastic state, by heating, hardening, and curing the material, while it is covered by, and in contact with, tin-foil, or similar sheets of other metals, and while it is subject to no other pressure, with nothing but the tin-foil, or a similar sheet of other metal, to preserve the form and shape given to the material, while it is being subjected to the heating and hardening process—to preserve entire the form and shape given to the stamped or pressed material, in its green state, during the process of hardening, by means of the covering of the tin-foil, and by no other means, by no other pressure. It was held, that the patent did not grant to the patentee the exclusive right to vulcanize the hard compound, whenever it was covered by, and in contact with, metallic surfaces. The patent of the 20th of December, 1853, shows, on the face of it, that it was common to place the material between plates, or in moulds, of tin or other metal, so that the material would be in close contact with the plates, or moulds, of tin or other metal, to preserve its form. It was held, also, that the patent of April 4th, 1854, did not grant the exclusive right to vulcanize the compound, when the series of sheets were piled upon one another, with interposed sheets of flexible material, when the pile was confined between iron plates. It was held, however, that the patent did grant the exclusive right to the use and application of tin-foil, or its equivalents, to the hard compound of india-rubber and gutta-percha, during the process of vulcanization, in the manner described, to preserve and retain, during the process of heating and hardening, the forms and shapes given to the material before the heating process commenced, without any other pressure or mould. That is the grant of right contained in the patent; and, as the jury found, that neither tin-foil, nor any other flexible, pliable material or substance, performing substantially the same office, (to preserve and retain the form and shape,) in substantially the same way, had, previously to the invention of the patentee, been used or applied as a covering to the hard compound of india-rubber or gutta-percha, substantially in the manner described in the patent, to preserve and retain during the process of heating and hardening, without any other pressure, the form and shape given to the material to be vulcanized, before the heating process commenced, that grant of right is a valid grant of right. Therefore, the defendants have no right to the use and ap-

plication of tin-foil, (or its equivalents,) to the hard compound of india-rubber and gutta-percha, during the process of vulcanization, in the manner described, to preserve and retain, during the process of heating and hardening, the form and shape given to the material, before the heating process commences, without any other pressure or mould; and to prevent, in future, such use and application, an injunction must issue. Every mode of operation, the exclusive right to which is not granted by this patent, or by the patent of December 20th, 1853. the defendants have a right to adopt.

The nature of the invention secured by the patent of the 20th of December, 1853, consists in producing, by means of oil and other fatty substances, smooth and glossy surfaces upon the material commonly known as the hard compound of vulcanized caoutchouc or gutta-percha, or other vulcanizable gums, which may be manufactured according to the patents granted to Charles Goodyear and to Nelson Goodyear; and what was granted was, the use of oil, or other equivalent substance, applied to the surface of the prepared gum, and between the gum and the plates of metal or the moulds, substantially as described in the specification, to produce such surfaces by such means. An injunction must issue, to prevent such use.

[NOTE. For a motion for an attachment against the defendants for contempt in violating the injunction granted in this case, see Case No. 11,282.] ·

[For other cases involving these patents, see note to Case No. 11,283.]