**TUBULAR HEATING & VENTILATING CO. v. MT. VERNON FURNACE & MFG. CO. et al.**

(District Court, E. D. Illinois. December 4, 1924.)

No. 2185.

1. **Trade-marks and trade-names and unfair competition ☞81—Injunction not appropriate remedy for past infringement of trademark.**

Injunction is not appropriate remedy for past infringement, and will lie only to prevent further injury when actually threatened.

2. **Trade-marks and trade-names and unfair competition ☞93(3)—Evidence held to warrant conclusion that defendant had abandoned use of plaintiff's trade-mark.**

In suit to enjoin infringement of trademark, facts *held* to warrant conclusion that de-

fendant had abandoned use of plaintiff's trademark, and that there was no reasonable ground for apprehension on part of plaintiff of further infringement by defendant.

3. **Trade-marks and trade-names and unfair competition ☞79 — Bill for accounting against infringer of trade-mark cannot be sustained.**

A bill in equity, for a naked accounting for profits and damages against infringer of trademark, cannot be sustained; the remedy at law being complete and adequate.

4. **Injunction ☞223(1) — Manufacturers held not in contempt for violation of injunction against infringement because of actions of dealer.**

Manufacturers of heating apparatus could not be held in contempt for violation of injunction against infringement of trade-mark because dealer was offering for sale furnace they had manufactured, with such trade-mark attached thereto, where manufacturers had no control over dealer, and after his actions were brought to their attention they forwarded new plates with other name thereon to be placed upon the furnaces.

In Equity. Suit by the Tubular Heating & Ventilating Company against the Mt. Vernon Furnace & Manufacturing Company and another, in which a temporary injunction was issued. Defendants discharged from rule to show cause why they should not be adjudged in contempt, injunction dissolved, and bill dismissed.

The plaintiff brings suit against the defendant corporation and one of its officers, alleging that on or about November 1, 1918, it adopted the word symbol "Master" as a trade-mark for warm air furnaces, and thereafter used the same continuously, so that it has become of great value; that on or about November 29, 1920, the defendant corporation adopted the name for the same purpose, and has since continued to use it, filing in the United States Patent Office, on January 4, 1921, application for registration of the trade-mark; that the Commissioner of Patents registered said trade-mark June 21, 1921; that on March 22, 1923, plaintiff made application for cancellation of said trade-mark, and that on May 7, 1924, the Examiner of Interferences rendered a decision, holding that plaintiff had proved its exclusive ownership of the trademark, and canceling defendant's registration; that the defendant was at the time of the beginning of said suit infringing upon plaintiff's rights, and threatening to continue to do so, to the great damage of the plaintiff. The bill seeks an injunction against the alleged infringement, and an accounting.

The defendants admit the allegations which bear upon their adoption and use of the word "Master," and the registration, and

cancellation thereof, and, without admitting or denying the alleged priority of plaintiff, set out various acts of the defendants just prior to and after June 1, 1924, whereby it is claimed they abandoned the use of the word "Master," and substituted in lieu thereof, as a trade-mark for their product, the word "Vernois." Defendant corporation avers that it has done everything within its power to show its good faith in abandoning the word which plaintiff claims to be its property, and in adopting and using the substitute, and denies that it has at any time since June 1, 1924, manufactured or sold any product bearing the trade-mark "Master," but avers that on the contrary it has notified the trade, its dealers, traveling salesmen, and the public generally, by telegrams, letters, and advertising in trade journals, that the substitution has been made, and the former trade-mark abandoned. It denies that it intends to use the former trade-mark, and asks that the bill be dismissed for want of equity.

It appears from the evidence that the plaintiff first adopted the said trade-mark in the fall of 1918, and first sold furnaces with the same applied to them in January, 1919. It has continued using said name in connection with its product, and applied for and obtained cancellation of the registered trade-mark of defendants upon the date mentioned in the bill. The defendant corporation prayed an appeal to the Commissioner of Patents, and said appeal was still pending at the time of the filing of the bill of complaint.

Two of the defendant corporation's officers went to the place of business of the plaintiff in Philadelphia, in the latter part of May, 1924. They stated that they had taken an appeal, but were desirous of settling the controversy. Plaintiff's officers told them they must cease using the trade-mark "Master," and compensate plaintiff for such damages as it had incurred by the wrongful use of the trade-mark by defendants. Some discussion was had as to the catalogues and literature of the defendants, which contained the name "Master." Defendants' witnesses claim that the plaintiff's officers told them that they might use the said literature by substituting, by rubber stamps and stickers, for the word "Master," the word "Vernois," in their catalogues, stationery, invoices, bill heads, circulars, and other literature. Plaintiff's witnesses claim they made no such statement. Defendants had prepared a written contract, which the plaintiff would not execute. Thereupon, on

May 24, 1924, defendants' witnesses claim, they told plaintiff's officers that they would dismiss their appeal then pending, and take immediate steps to abandon the trade-mark "Master."

Promptly upon the return of defendant's officers to Mt. Vernon, defendants did certain specific things to carry out said expressed intention. They immediately adopted as a new name for the furnaces sold by them the fanciful name "Vernois"; directed their then attorney, by letter, to dismiss the appeal from the Examiner of Interferences; after June 1st neither manufactured nor sold any more furnaces with the word "Master" upon them; and directed their traveling salesmen to discontinue selling any furnaces bearing the word "Master," and so to advise the trade. They ordered rubber stamps and stickers for use in connection with the literature, stationery, circulars, and catalogues, whereby they could and did change the name "Master" to "Vernois"; furnished copy to the trade journals for new advertising, giving notice to the trade that the word "Master" had been abandoned; procured for their own use, and the use of the trade, cuts of their furnaces, showing thereon the name "Vernois"; advised their dealers and the trade journals of the change in names, and requested that all old cuts be returned, so that the change might be made thereon without expense to the trade; and, by letter, advised the plaintiff of these various acts, stating that the letter was intended as evidence of the defendants' good faith, and that there would be no deviation upon defendants' part in the actual discontinuation of the use of the word "Master." The plaintiff made no reply to this letter, but, after receiving the same, filed its bill of complaint.

The then trade-mark attorney for the defendants, without their knowledge, instead of complying with the defendants' request to dismiss the appeal, allowed it to lie without action, and, a short time subsequent to the filing of the bill, the Assistant Commissioner of Patents affirmed the decision of the Examiner of Interferences; no appearance being made on behalf of either party. Subsequent to the filing of the bill, while the attorneys were engaged in taking depositions in the city of Philadelphia, the plaintiff learned that a certain dealer in Philadelphia had on hand some 70 furnaces, manufactured by the defendant corporation, bearing the name "Master," which the said dealer was offering for sale. The attorney for the plaintiff conferred with the dealer, and

later an officer and the attorney of the defendant corporation conferred with him. The testimony is in direct conflict as to what transpired at the conferences, but it appears in evidence, without any question, that this dealer had purchased the furnaces in the winter and spring of 1924, that the last shipment had been made by the defendant to the dealer in March, and that no new furnaces had been shipped or sold to this dealer after March, 1924. After discovering that these furnaces were still on hand at the time in question, in October, 1924, defendant shipped to the said dealer name plates bearing the name "Vernois," to replace the plates on the furnaces bearing the name "Master." The plaintiff has filed a petition for citation against the defendants, asking that they show cause why they should not be adjudged in contempt of court in violation of the temporary injunction issued herein.

Glennon, Cary, Walker & Murray, of Chicago, Ill., and Arthur E. Paige, of Philadelphia, Pa., for plaintiff.

Luke E. Hart, of St. Louis, Mo. (Hart & Hart, of St. Louis, Mo., on the brief), for defendants.

LINDLEY, District Judge (after stating the facts as above). [1] An injunction is not the appropriate remedy for past infringement of a trade-mark, and is to be used only for the prevention of further injury, when such injury is actually threatened. If a defendant has in good faith ceased infringement before suit brought, and the plaintiff has had full opportunity to learn of said action, and if the court is convinced that further infringement is not intended, or is not reasonably to be apprehended, it should refuse the injunction, and dismiss the bill. Kennicott Water Softener Co. v. Bain, 185 F. 520, 107 C. C. A. 626 (C. C. A. 7th Circuit).

[2] The only question in the present case is whether, assuming that the trade-mark of the plaintiff is valid, that the defendants have infringed and that the infringement had ceased before the bill was filed, which is clearly proved, the plaintiff, when the bill was filed, did have any reasonable ground to believe that the infringement would be repeated. The defendant corporation left nothing undone that a reasonably prudent person might have done to show that it had actually abandoned the use of the word "Master," and intended never to use the same again. It advised its traveling men, its dealers, and the public generally, that it had abandoned

the word "Master," and that it had substituted therefor the word "Vernois," and it placed in the trade journals full-page advertisements, stating the same facts, and giving the reason for such action. It not only abandoned the word "Master," but it immediately began to endeavor to create good will and value in the trade-name "Vernois." True it is that the then attorney for the defense did not at once dismiss the appeal, but the correspondence between the attorney and the defendant shows, beyond peradventure, that he had been told to dismiss the appeal, and the defendant's officers believed that he had done so, and had no knowledge to the contrary until after the decision of the Examiner had been affirmed by the Assistant Commissioner of Patents.

Had the plaintiff believed that the appeal was being prosecuted, it might have had some reason to believe that further infringement was intended. But it was advised in writing of the defendants' various acts, which were not possibly consistent with any intention other than the absolute and final abandonment of the trade-mark "Master."

The fact that a dealer in Philadelphia may have claimed the right to sell furnaces bought from the defendant under the name "Master" was not discovered by plaintiff until after the bill was filed. Furthermore, it was shown that the defendants had no control over said dealer, and that, as soon as his actions were brought to their attention, they forwarded new plates with the name "Vernois" to be placed upon said furnaces. The court therefore is inevitably driven to the conclusion that, at the time the present bill of complaint was filed, there was no infringement being committed by the defendants, no threat of further infringement, and no reasonable ground for apprehension upon the part of the plaintiff that there would be further infringement. Therefore there was no irreparable injury. Under the case cited above and numerous decisions, this bill cannot be retained for the purpose of granting an injunction.

[3] The plaintiff seeks also an accounting for damages, but a bill in equity for a naked accounting for profits and damages against an infringer cannot be sustained. Root v. Railway Co., 105 U. S. 189, 26 L. Ed. 975. If plaintiff has suffered damages by action of defendant, there is a complete and adequate remedy at law. Van Raalt v. Schneck (C. C.) 159 F. 249, affirmed by C. A. A. for the 7th Circuit, 170 F. 1021, 95 C. C. A. 672.

[4] It appears from what has been said that the defendants have been guilty of no

contempt of court by any violation of the temporary injunction heretofore issued. The actions of the dealer in Philadelphia were not the actions of the defendants, and the defendants had no control over him. They are discharged from the rule, the temporary injunction is dissolved, and the bill is dismissed for want of equity.